UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRIAN JORDAN & CREATIVE GROUP            :
MARKETING, L.L.C.,
                                         :

                    Plaintiff,           :        04 Civ. 4696 (PKL) (AJP)

            -against-                    :        **OPINION & ORDER**

                                         :
CAN YOU IMAGINE, INC. AKA CYI, INC.
& HPI HONG KONG LTD.,                    :

                    Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Chief Magistrate Judge:**

        Presently before the Court in this diversity breach of contract action over the parties'

rights to sell the toy, "Airzooka," is defendants' motion for a preliminary injunction to enjoin

plaintiffs and third party defendants (collectively, "plaintiffs") from interfering with defendants'

business relationships with their customers during the pendency of this action. (Dkt. No. 30: Notice

of Motion for Preliminary Injunction.) Specifically, defendants seek to enjoin plaintiffs "from

misusing Defendants' confidential information and from interfering with Defendants' business

relationships with their customers during the pendency of this action, and from contacting and

threatening Defendants' customers with false and misleading statements regarding Defendants'

Product." (Dkt. No. 31: Defs. P.I. Br. at 4.) The parties have consented to my decision of the

preliminary injunction motion pursuant to 28 U.S.C. § 636(c). (Dkt. No. 43.)

For the reasons discussed below, defendants' motion is <u>GRANTED</u> to the extent of preliminarily enjoining plaintiffs from using defendants' royalty reports to identify and contact customers, but <u>DENIED</u> to the extent defendants seek to enjoin plaintiffs from sending "cease and desist" letters to defendants' customers.

<u>FACTS</u>

**The Parties' License Agreements**

The parties' relationship began with a November 27, 2001 License Agreement (Dkt. No. 32: Benjamin Aff. Ex. A: 11/27/2001 License Agreement), which was replaced by the August 4, 2003 License Agreement at issue in this lawsuit (Benjamin Aff. Ex. E: 8/4/03 License Agreement).

The 2003 License Agreement was between defendants CYI, Inc. and HPI Hong Kong Ltd. (collectively, "CYI") as licensee, and plaintiff Creative Group Marketing ("Creative" or "CGM") as licensor and plaintiff Brian Jordan as "inventor." (Benjamin Aff. Ex. E: 8/4/03 License Agmt., p. 1.) Plaintiff Creative as licensor granted CYI the exclusive right to manufacture and distribute the Airzooka toy. (<u>Id</u>. ¶ 1.1(a).)[1] The License Agreement, however, allowed both CYI and also Creative to "advertise, sell and distribute" the product on the internet. (8/4/03 License Agmt. ¶ 1.5.)

The License Agreement provided that if CYI "terminates this Agreement or breaches the Agreement and does not cure the breach so LICENSOR [Creative] terminates the agreement, [CYI] agrees to transfer the Patent covering the License Device to the INVENTOR [Jordan], as well as the trademark." (8/4/03 License Agmt. ¶ 1.7.)

---

[1] The License Agreement identifies the product as the "Air Bazooka." (<u>Id</u>. Schedule A-1.) CYI sold the product under the trademark "Airzooka." (Benjamin Aff. ¶ 3(g).)

The License Agreement required the contracting parties to "notify each other of any suspected infringement by any third party of the rights in and to the Licensed Item(s) . . . " (8/4/03 License Agmt. ¶ 6.)  The Agreement provided for suit to be brought by CYI or by Creative, with whoever brings suit required to pay the cost thereof.  (Id.)  The Agreement did not, per se, require either party to bring such a suit, but it does provide that:  "If the LICENSOR [Creative, or], INVENTOR [Jordan] . . . fail to prosecute the third party infringer and such third party adversely affects the sales of the COMPANY [CYI], all royalties and payments shall cease upon [CYI's] 30-day notice in writing to [Creative]."  (Id.)

The License Agreement provided that Creative could terminate the Agreement "at any time for non-payment of Advances, Royalties or Minimum Royalties" or "upon any other breach of this Agreement" by CYI, with notice and cure provisions.  (8/4/03 License Agmt. ¶ 8.1.)  "Upon expiration or termination of this Agreement by LICENSOR [Creative]:  (i) all rights granted to the COMPANY [CYI] hereunder shall immediately and automatically revert back to the INVENTOR [Jordan], and the COMPANY [CYI] shall cease the manufacture, distribution, sale, promotion, advertising and marketing of the Licensed Item."  (8/4/03 License Agmt. ¶ 8.2.)

Finally, the License Agreement provided that CYI, Creative and Jordan "shall keep the terms of this Agreement and any royalty reports or other information submitted pursuant to this Agreement confidential and shall not disclose such information to any other person, firm, corporation or entity . . . " (8/4/03 License Agmt. ¶ 21.)

**Termination of the License Agreement**

In February 2004, CYI discovered a potentially infringing product being sold by a third party, and notified plaintiffs. (Benjamin Aff. ¶¶ 5(a)-(b).) Neither plaintiffs nor defendants decided to pursue the infringer. (Benjamin Aff. ¶¶ 5(c)-(d).) Claiming that the third party's activity damaged CYI's sales, CYI ceased to pay royalties, which are being held in escrow by CYI's counsel. (Benjamin Aff. ¶¶ 5(e)-(f).)

The relationship between Creative and CYI went down-hill from there; Creative terminated the License Agreement, alleging that CYI failed to sell product to Creative, failed to obtain insurance covering Creative, and failed to provide evidence of the third party's effect on sales despite Creative's investigation that showed no sales by the third party. (Dkt. No. 39: Ahlert Aff. ¶¶ 5-11 & Ex. 8.)

Creative and Jordan entered into a new license agreement with third party defendant Gary Alhert and his company, Universal Toys ("UT"), to market the Airzooka. (Ahlert Aff. ¶ 13.)

**This Lawsuit**

Jordan and Creative sued CYI on or about June 21, 2004, for: breach of contract, failure to transfer intellectual property rights to plaintiffs, unpaid royalties and punitive damages. (Dkt. No. 1: Compl. 1st-4th Causes of Action.) CYI counterclaimed against plaintiffs, and asserted third party claims against Ahlert and UT, for patent infringement, unfair competition and trademark infringement, breach of contract, and tortious interference with business relations. (Dkt. No. 6: Answer & Counterclaims ¶¶ 28-80; Dkt. No. 36: Amended 3d Party Compl. ¶¶ 32-70.)

**Plaintiffs' Communications With Defendants' Customers**

In June 2004 and again in February 2005, plaintiffs wrote to some of CYI's customers, stating that: CYI's license was no longer in effect, CYI was no longer authorized to sell the Airzooka, and purchase of the Airzooka from CYI violates Creative's intellectual property rights and "may result in legal action taken against" the customer. (See Dkt. No. 32: Benjamin Aff. ¶¶ 6(a)-(d) & Exs. G-I.) Creative's letters also advised the customer to purchase the Airzooka through Ahlert's company, UT. (Benjamin Aff. Exs. H-I; see also Benjamin Aff. ¶ 7 & Ex. J, concerning Creative's acquisition of the Airzooka.com web site and its notice thereon that CYI is no longer the authorized source for the Airzooka.)

CYI's vice president and general manager, Barry Benjamin, opines that Creative wrote to customers by using CYI's customer lists from the royalty reports:

> The only source of Defendants' customer list that Plaintiffs acquired and shared with Third Party Defendant UT [Ahlert's company, Universal Toys] is from Defendants. Plaintiffs improperly shared the confidential customer list with UT to enable UT to target Defendants' customers. Such misuse of Defendants' confidential information has materially damaged Defendants.

(Benjamin Aff. ¶ 6(e).)

Creative and Ahlert, however, claim that they identified customers through an Internet search or from customers contacting plaintiffs. (Dkt. No. 39: Ahlert Aff. ¶¶ 14-15; Dkt. No. 38: Melville Aff. ¶¶ 6-7, 10.) Thus, Ahlert stated:

> 14. Plaintiffs have identified parties who have previously purchased Airzooka products by searching the Internet and responding to communications directed to Plaintiffs inquiring about the product.

15.  In accordance with its rights as the sole owner of the intellectual property associated with the Airzooka, Plaintiffs have informed such parties of the rights of the Plaintiffs, and their intention to protect the rights of Plaintiffs in the product.

(Ahlert Aff. ¶¶ 14-15.)  Universal Toys' General Manager Melville further explained:

6.  As a result of our ownership of the Airzooka.net Internet domain, many prospective purchasers contacted us.  Additionally, the former owner of the Airzooka.com Internet domain had been unreliable and many former customers of theirs contacted us for product, or adjustment of prior orders.

7.  We therefore had a list of former and prospective purchasers of the product. Additionally an Internet search of the name "Airzooka" yielded many sellers of the product, all of which had previously purchased from CYI and/or HPI.  This information was all in the public domain.

. . . .

10.  . . . [I]n an effort to promote the sale of the Airzooka product, we have contacted the prospective customers whose names came into our possession in lawful fashion.  Such contact has been lawful, truthful and accurate, to the effect  that CYI and HPI are no longer licensed to sell the product and Unreal Toys, as Licensee of the Plaintiffs, is so licensed, and that any purchase of the product should be in accordance with the lawful license.

(Dkt. No. 38: Melville Aff. ¶¶ 6-7, 10.)[2]

## ANALYSIS

"[A] preliminary injunction may be granted when the party seeking the injunction establishes that '1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor

---

[2]     CYI's attorney requested production of the Internet search list of Airzooka customers, but Melville did not provide it.  (See Dkt. No. 45: Miskin Aff. ¶ 4; Dkt. No. 44: Defs. Reply Br. at 6.)

of the moving party.'" No Spray Coalition, Inc. v. City of New York, 252 F.3d 148, 150 (2d Cir. 2001) (per curiam) (quoting Otokoyma Co. v. Wine of Japan Import, Inc., 175 F.3d 266, 270 (2d Cir. 1999)); accord, e.g., Moore v. Consolidated Edison Co., No. 03-9281, 124 Fed. Appx. 39, 40, 2005 WL 481571 at *1 (2d Cir. Mar. 1, 2005); Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003); Bronx Household of Faith v. Board of Educ. of City of New York, 331 F.3d 342, 348-49 (2d Cir. 2003); Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2d Cir. 2003); Marshall v. National Ass'n of Letter Carriers, 03 Civ. 1361, 2003 WL 22119882 at *1 (S.D.N.Y. Sept. 15, 2003) (Peck, M.J.), report & rec. adopted, 03 Civ. 1361, 2004 WL 2202574 (S.D.N.Y. Sep. 30, 2004) (Swain, D.J.).[3/]

Because the requested scope of the injunction is quite limited – it is not to enjoin plaintiffs' sale of the Airzooka or even enjoin plaintiffs from contacting defendants' customers, but is only to enjoin plaintiffs from using defendants' royalty reports to contact defendants' customers – the Court will grant the injunction to preserve the status quo, although CYI has not presented a particularly strong case.[4/]

---

[3/]    See also, e.g., Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996); Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 779-80 (2d Cir. 1994); Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 77-78 (2d Cir. 1994); Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 314-15 (2d Cir. 1982); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (per curiam); Jackson v. Johnson, 962 F. Supp. 391, 393 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.).

[4/]    The Court notes that while plaintiffs opposed defendants' preliminary injunction motion, they did so with a five page brief, all but three paragraphs of which were background facts; the argument paragraphs said no more than that plaintiffs legitimately terminated CYI's license, and that plaintiffs would be harmed if they could not sell this product. (See Dkt. No. 40: Defs. P.I. Opp. Br.)

The 2003 License Agreement refers to the product as the "Air Bazooka" and requires defendants on termination to transfer that trademark back to Jordan. (8/4/03 License Agmt. ¶ 17.) CYI claims, however, that it developed the separate trademark "Airzooka" and is not required by the License Agreement to give that to Creative or Jordan even on termination of the License Agreement. (Dkt. No. 31: Defs.' P.I. Br. at 20.) Thus, in CYI's view, on termination of the License Agreement, Jordan would sell the "Air Bazooka" but not under the name it is known by, the "Airzooka," which trademark (but not product) would remain with CYI. (Id.) Plaintiffs, in contrast, claim that because the product was being marketed as the Airzooka under the 2001 License Agreement, implicit in the 2003 License Agreement is that the "Airzooka" trademark reverts to Jordan on termination.

CYI's counterclaims involve a Lanham Act claim for plaintiffs' use of the trademark Airzooka. (See page 4 above.) Accordingly, CYI satisfies the likelihood of irreparable injury in the absence of a preliminary injunction requirement by the legal presumption of likelihood of irreparable injury if success on the merits can be shown. See, e.g., New Kayak Pool Corp. v. R & P Pools, Inc., 246 F.3d 183, 185 (2d Cir. 2001); Fun-Damental Too Ltd. v. Gemy Indus. Corp., 111 F.3d 993, 999 (2d Cir. 1997); Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 967-68 (2d Cir. 1995); Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988).

As to the merits of defendants' trademark counterclaim, the Court need not go through a full-blown Polaroid analysis. See Polaroid Corp. v. Polaroid Elec. Corp., 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820, 82 S. Ct. 36 (1961). Suffice it to say that plaintiffs are using the identical "Airzooka" mark as CYI's trademark, for the identical product (albeit, according to CYI, of lower quality). (See Dkt. No. 31: Defs.' P.I. Br. at 21-25; Dkt. No. 32: Benjamin Aff. ¶¶ 10-12.)

The issue thus will turn on whether plaintiffs have the right to the Aizooka trademark on termination of the License Agreement.

The parties have not presented sufficient information for the Court to be able to say that CYI (or Creative, for that matter) is likely to succeed on the merits on this claim (or on the issue of which party breached the License Agreement). There are, however, sufficiently serious questions going to the merits of these claims and counterclaims to make them a fair ground for litigation.

The remaining issue, therefore, is whether the balance of hardships tips decidedly in favor of CYI as the moving party. If CYI were trying to enjoin plaintiffs from selling the Airzooka, or contacting CYI's customers by any means, the Court could not say (on this record, at least) that the balance of hardships would tip in favor of CYI. It is the limited nature of the injunction sought – preventing plaintiffs from using CYI's royalty reports to learn the identity of and contact CYI's customers – that allows the Court to find the balance tips in CYI's favor.

Plaintiffs claim that they have been able to contact customers through internet searches (and when customers contact plaintiffs through the two Airzooka web sites). (See pages 5-6 above.) If plaintiffs are to be believed, they have not mis-used the royalty reports, have no need to use the royalty reports going forward, and accordingly, they will not be harmed by entry of a preliminary injunction against such use of the royalty reports.

CYI is dubious of plaintiffs' claims to have learned of CYI's customers through the internet. (See page 6 & n.2 above.) The Court notes, however, that a "Google" search for the word Airzooka turned up 39,100 "hits", i.e., internet references, to Airzooka. The Court did not review all of them, but a cursory look revealed many stores selling the Airzooka. Thus, plaintiffs can sell

their version of Airzooka and/or send "cease and desist" letters to sellers of CYI's Airzooka, based on internet research. There is little reason for plaintiffs to need to use CYI's royalty reports going forward.

The Court therefore enjoins plaintiffs from, using CYI's royalty reports in order to identify and contact CYI's customers.

To the extent CYI also seeks to enjoin plaintiffs from sending "cease and desist" type letters (see Dkt. No. 31: Defs. P.I. Br. at 25-26; see also Dkt. No. 32: Benjamin Aff. Exs. G-I), the motion is DENIED. Plaintiffs' position in this lawsuit is that it has terminated CYI's license to sell the Airzooka. (See page 4 above.) The parties have not submitted sufficient proof on this motion as to who will prevail on the breach of contract claim and counterclaim. The Court will not on this record prohibit either side from telling customers their position on who has the right to sell the Airzooka. Let "freedom of information" prevail. Any harm from lost or transferred sales can be addressed in this case through monetary damages. See, e.g., Lopes v. International Rubber Distrib., Inc., 309 F. Supp. 2d 972, 980 (N.D. Ohio 2004); Biagro Western Sales, Inc. v. Helena Chem. Co., 160 F. Supp. 2d 1112, 1135 (E.D. Cal. 2001).

Plaintiffs ask the Court to impose an "appropriate bond to protect the Plaintiffs against the harm which would be caused by the inability to continue unfettered sales of the product." (Dkt. No. 40: Plfs. P.I. Opp. Br. at 5.) The Court notes that the injunction CYI requested, and the injunction the Court is granting, does not prevent plaintiffs' sales of the Airzooka. Indeed, since plaintiffs have claimed that they have not to date used CYI's royalty reports, plaintiffs have not shown that they would suffer any harm from the injunction. The Court therefore finds that no bond

is needed.  See, e.g., Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996) (District Court

has wide discretion in the bond amount required to secure a preliminary injunction and can even

dispense with a bond); Masefield AG v. Colonial Oil Indus., Inc., 05 Civ. 2231, 2005 WL 911770

at *8 (S.D.N.Y. Apr. 18, 2005) (Leisure, D.J.) ("District courts in the Second Circuit are vested with

wide discretion in determining the amount of the bond that the moving party must post.  Indeed, in

cases where the non-movant has not shown a likelihood of harm, the district court may properly set

no bond.") (citations omitted); Emons Indus., Inc. v. Liberty Mutual Ins. Co., 749 F. Supp. 1289,

1299 (S.D.N.Y. 1990) (Leisure, D.J.) (amount of bond is in court's discretion); Bronson v.

Crestwood Lake Section 1 Holding Corp., 724 F. Supp. 148, 159 (S.D.N.Y. 1989) ("Since 'there has

been no proof of likelihood of harm to the party enjoined,' this Court dispenses with the security

requirement of Fed. R. Civ. P. 65(c).").

## CONCLUSION

For the reasons set forth above, plaintiffs and third party defendants (and all those in

active concert with them) are preliminarily enjoined from using defendants' royalty reports to identify

and/or contact defendants' customers.  The injunction does not prevent plaintiffs and third party

defendants from sending truthful "cease and desist" type letters to, or otherwise contacting,

customers learned of through lawful means other than via defendants' royalty reports.  This serves

to preserve the status quo. The parties shall settle the form of injunction within three business days

of this Opinion and Order.

SO ORDERED.

Dated:     New York, New York
           May 12, 2005

                                        Andrew J. Peck
                                        United States Chief Magistrate Judge

Copies **by fax & ECF** to:     Helen Davis Chaitman, Esq.
                                Howard C. Miskin, Esq.
                                Judge Peter K. Leisure